**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

_____
                                                                )
UNITED STATES OF AMERICA and          )
STATE OF COLORADO,                             )
                                                                )
            Plaintiffs,                                      )
                                                                )
      v.                                                        )            Case No. 1:20-cv-01931
                                                                )
KERR-McGEE GATHERING LLC,           )
                                                                )
            Defendant.                                    )
_____ )

## COMPLAINT

Plaintiffs, the United States of America, by authority of the Attorney General of the

United States, and the State of Colorado, by authority of the Attorney General of Colorado, and

through the undersigned attorneys, acting at the request of the Administrator of the United States

Environmental Protection Agency ("EPA") and the Colorado Department of Public Health and

Environment, Division of Administration ("CDPHE"), file this Complaint and allege as follows:

## STATEMENT OF THE CASE

1.        This is a civil action against Defendant Kerr-McGee Gathering LLC pursuant to

Section 113(b) of the Clean Air Act (the "Act"), 42 U.S.C. § 7413(b), and Sections 121 and 122

of the Colorado Air Pollution Prevention and Control Act (the "Colorado Act"), C.R.S. §§ 25-7-

121 and 122, in connection with unlawful air emissions from three contiguous natural gas

processing plants owned and operated by Defendant near Fort Lupton, Weld County, Colorado

(the "Fort Lupton Complex").  The United States and CDPHE seek permanent injunctive relief

and civil penalties for Defendant's violations of Sections 111 and 112 of the Act, 42 U.S.C. §§ 7411 and 7412, and regulations promulgated under the Clean Air Act and the Colorado Act pertaining to leak detection and repair requirements for air pollutants emitted from onshore natural gas processing plants.

2.      Defendant's failure to comply with leak detection and repair requirements has resulted in excess emissions of volatile organic compounds ("VOCs"), a precursor to ground-level ozone, often referred to as "smog."  Exposure to ground-level ozone can cause lung function diminution, pulmonary inflammation, and other symptoms.  Children, people with respiratory illness, the elderly, and those working or exercising outdoors have a higher risk of adverse health effects from ozone exposure.

3.      VOCs form ground-level ozone by reacting with sources of oxygen molecules, *e.g.*, nitrogen oxides and carbon monoxide, in the atmosphere in the presence of sunlight. Ground-level ozone is one of six criteria pollutants for which the EPA has promulgated National Ambient Air Quality Standards ("NAAQS") due to its adverse effects on human health and the environment.

4.      The Fort Lupton Complex is located in an area of Colorado where air quality is so degraded that it exceeds the relevant standards for ground-level ozone and thus is considered to be in "serious nonattainment" with the ozone NAAQS. Unlawful excess emissions of VOCs from Defendant's natural gas processing plants potentially contribute to this exceedance of the ozone NAAQS.

5.      In addition, the Fort Lupton Complex is located approximately 60 miles from Rocky Mountain National Park, which has been designated as a Federal Class I area under

2

Section 169A of the Act.  42 U.S.C. § 7491(a)(1).  Portions of Rocky Mountain National Park are located within the Denver Nonattainment Area.  Excess ground-level ozone can result in haze that degrades visibility and causes other environmental problems within the confines of the Park and neighboring national forest areas.

6.      The Fort Lupton Complex also emits benzene and other hazardous air pollutants ("HAPs") listed under Section 112(b) of the Act.  42 U.S.C. § 7412(b).  Regulation of HAPs is separate from VOC regulation under the Act because HAPs can cause cancer and other serious diseases.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

8.      This Court has supplemental jurisdiction over the state law claims asserted by Colorado pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this judicial district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), 1391(c), and 1395(a), because the violations that constitute the basis of this complaint occurred in, and Defendant conducts business in, this judicial district.

## AUTHORITY AND NOTICE

10.      The United States has authority to bring this action on behalf of the Administrator of the EPA under 28 U.S.C. §§ 516, 519 and Section 305 of the Act, 42 U.S.C. § 7605.

11.      Colorado has authority to bring this action on behalf of CDPHE under C.R.S. §§ 25-7-121 and 122.

12.     Notice of the commencement of this action has been given to the appropriate air pollution control agency in the state of Colorado as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## DEFENDANT

13.     Defendant is a Colorado limited liability company with its corporate headquarters in The Woodlands, Texas.  It is a wholly owned subsidiary of Western Midstream Partners, LP, and its ultimate corporate parent is Occidental Petroleum Corporation.

14.     Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

15.     Defendant owns and operates three contiguous onshore natural gas processing plants at the Fort Lupton Complex in Weld County, Colorado, known as the "Lancaster Plant," the "Fort Lupton Plant," and the "Platte Valley Plant."

## STATUTORY AND REGULATORY BACKGROUND

### A.     National Ambient Air Quality Standards for Ozone

16.     Section 108 of the Act, 42 U.S.C. § 7408, directs the Administrator of the EPA to identify those air pollutants which "may reasonably be anticipated to endanger public health or welfare" and to issue air quality criteria for those pollutants based on "the latest scientific knowledge" about the effects of the pollutants on public health and the environment.  The pollutants identified as such are called "criteria pollutants."

17.     Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of the EPA to promulgate regulations establishing NAAQS for criteria pollutants.  The primary NAAQS must be set at the level "requisite to protect the public health" with an adequate margin of safety,

and the secondary standard is intended to protect "the public welfare."  According to Section 302(h) of the Act, 42 U.S.C. § 7602(h), public welfare effects are "effects on soils, water, crops, vegetation" and other environmental impacts including, but not limited to, effects on animals, wildlife, property, and "effects on economic values."

18.     NAAQS are implemented within air quality control regions (or "areas") throughout individual states.  An area with an ambient air concentration that meets the NAAQS for a particular criteria pollutant is an "attainment" area.  An area with ambient air concentrations that exceed the NAAQS is a "nonattainment" area.  And an area that cannot be classified due to insufficient data is "unclassifiable."

19.     In 2008, the EPA established a primary and secondary NAAQS for ozone of 0.075 parts-per-million ("ppm") (measured as an 8-hour average). 73 Fed. Reg. 16,436 (Mar. 27, 2008).  In 2015, the EPA lowered the primary and secondary NAAQS for ozone to 0.070 ppm (measured as an 8-hour average). 80 Fed. Reg. 65,292 (Oct. 26, 2015).

20.     The EPA designated the following counties in Colorado as being in nonattainment with the 2008 and 2015 ozone NAAQS: Adams, Arapahoe, Boulder, Broomfield, Denver, Douglas, Jefferson, and portions of Larimer and Weld Counties ("Denver Nonattainment Area"). *See* 77 Fed. Reg. 30,088 (May 21, 2012); 83 Fed. Reg. 25,792 (June 4, 2018).

21.     Over three million people live in the Denver Nonattainment Area and are potentially affected by exposure to ground-level ozone.

22.     The potential adverse effects on human health of ozone pollution are well known. Epidemiological studies reviewed by the EPA in setting the ozone NAAQS indicate that potential adverse effects on human health of short-term exposures to ground-level ozone include

lung function diminution, respiratory symptoms, and pulmonary inflammation.  73 Fed. Reg. at

16,445.  The American Thoracic Society has noted that individuals uniquely at much higher risk

for adverse health effects from ozone exposure include children, people with respiratory illness,

the elderly, outdoor workers, and healthy children and adults who exercise outdoors.  *Id.* at

16,462.

    **B.**  **<u>New Source Performance Standards</u>**

   23.  Section 111(b) of the Act authorizes the Administrator of the EPA to promulgate

standards of performance applicable to "new sources" within categories of sources that cause

"air pollution which may reasonably be anticipated to endanger public health or welfare."  42

U.S.C. § 7411(b).

   24.  A "new source" under Section 111 is any stationary source, the construction or

modification of which is commenced after the promulgation of the standards of performance that

will be applicable to such source.  42 U.S.C. § 7411(a)(2).

   25.  A "stationary source" is a building, structure, facility, or installation that emits or

may emit any air pollutant.  42 U.S.C. § 7411(a)(3).

   26.  A "modification" is "any physical change in . . . a stationary source which

increases the amount of any air pollutant emitted by such source."  42 U.S.C. § 7411(a)(4).

   27.  In 1979, the EPA listed "Crude Oil and Natural Gas Production" as a source

category that contributes significantly to air pollution and for which standards of performance

would be established.  44 Fed. Reg. 49,222 (Aug. 21, 1979).

28.     It is unlawful for owners and operators of any new source to operate in violation of applicable standards of performance after the standards have gone into effect.  42 U.S.C. § 7411(e).

**1.     *Subpart KKK***

29.     In 1985, based on the determination that emissions from crude oil and natural gas production cause or significantly contribute to air pollution that may reasonably be anticipated to endanger public health or welfare, the EPA promulgated "Standards of Performance for Equipment Leaks of VOC from Onshore Natural Gas Processing Plants" under Section 111 of the Act.  50 Fed. Reg. 26,124 (June 24, 1985).

30.     Each of these standards is a "standard of performance" within the meaning of Section 111(a)(1) of the Act, 42 U.S.C. § 7411(a)(1), or a "design, equipment, work practice, or operational standard, or combination thereof" under Section 111(h) of the Act, 42 U.S.C. § 7411(h).  These standards are set forth in 40 C.F.R part 60, subpart KKK ("Subpart KKK"), §§ 60.630–36.

31.     Subpart KKK incorporates certain provisions of 40 C.F.R. part 60, subpart VV ("Subpart VV"), by reference.  *See* 40 C.F.R. §§ 60.632(a), 60.482-1(a), (b) and (d), and 60.482-2 through 60.482-10.  These Subpart VV provisions require owners and operators of regulated facilities to monitor equipment such as pumps and valves for leaks of air pollutants, and to repair leaks.

32.     Owners or operators of onshore natural gas processing plants subject to Subpart KKK must monitor equipment using "Method 21," a test method that entails, *inter alia*, using a calibrated meter with a probe to carefully measure around equipment for leaks.  40 C.F.R.

7

§§ 60.632(d) and 60.485.  For purposes of Subpart KKK, a leak is detected from pumps and valves in natural gas processing plants if the detection instrument reading is 10,000 ppm or greater.  40 C.F.R. §§ 60.482-2 and 60.482-7.

33.     Pursuant to its authority under the Colorado Act, C.R.S. §§ 25-7-105(1)(b), 106(6), and 109, CDPHE adopted Subparts VV and KKK, including all amendments, into its Colorado Air Quality Control Commission Regulation 6, Part A. 5 Colo. Code Regs. § 1001-8 ("Regulation 6").

## 2.     *Subpart OOOO*

34.     In 2012, EPA promulgated under Section 111 of the Act "Standards of Performance for Crude Oil and Natural Gas Production, Transmission and Distribution." 77 Fed. Reg. 49,490, 49,542 (Aug. 16, 2012).

35.     Each of these standards is a "standard of performance" within the meaning of Section 111(a)(1) of the Act, 42 U.S.C. § 7411(a)(1), or a "design, equipment, work practice, or operational standard, or combination thereof" under Section 111(h) of the Act, 42 U.S.C. § 7411(h). These standards are set forth in 40 C.F.R part 60, subpart OOOO ("Subpart OOOO"), §§ 60.5360–5430.

36.     Subpart OOOO applies to "affected facilities" for which owners or operators commence construction, modification or reconstruction after August 23, 2011, and on or before September 18, 2015. 40 C.F.R. § 60.5365.

37.     Affected facilities are required to be in compliance with the standards of Subpart OOOO by October 15, 2012 or upon startup, whichever is later.  40 C.F.R. § 60.5370.

38.     A "modification" that triggers the applicability of Subpart OOOO includes the addition or replacement of equipment for the purpose of process improvement which increases emissions, unless the equipment addition or replacement is accomplished without a "capital expenditure."  42 U.S.C. § 7411(a)(4), 40 C.F.R. §§ 60.2 and 60.5365(f)(1).

39.     Subpart OOOO incorporates certain provisions of 40 C.F.R. part 60, subpart VVa ("Subpart VVa") by reference.  *See* 40 C.F.R. § 60.5400, 60.482-1a(a), (b) and (d), 60.482-2a, and 60.482-4a through 60.482-11a.  These Subpart VVa provisions require owners and operators of "affected facilities" to monitor equipment such as pumps and valves for leaks of air pollutants, and to repair leaks.

40.     Owners or operators of onshore natural gas processing plants subject to Subpart OOOO must comply with 40 C.F.R. § 60.485a, which requires owners and operator to use Method 21 in monitoring leaks from equipment.  40 C.F.R. § 60.5400(d).  For purposes of Subpart OOOO, a leak is detected from pumps in natural gas processing plants if the detection instrument reading is 2,000 ppm or greater, and from valves and connectors if the detection instrument reading is 500 ppm or greater.  40 C.F.R. §§ 60.482-2a, 60.487-7a, and 60.482-11a.

41.     Pursuant to its authority under the Colorado Act, C.R.S. §§ 25-7-105(1)(b), 106(6), and 109, CDPHE adopted relevant portions of Subpart OOOO, including all amendments, into its Regulation 6, Part A on October 18, 2012, effective as of December 15, 2012. 5 Colo. Code Regs. § 1001-8:A.  CDPHE fully adopted Subpart OOOO on February 20, 2014, effective as of April 14, 2014.

42.     Pursuant to its authority under the Colorado Act, C.R.S. §§ 25-7-105(1)(b), 106(6), and 109, CDPHE adopted Subpart VVa, including all amendments, into its Regulation 6, Part A on July 21, 2011, effective as of September 15, 2011. 5 Colo. Code Regs. § 1001-8.

C.     **National Emission Standards for Hazardous Air Pollutants**

43.     Section 112(d) of the Act authorizes the Administrator of the EPA to promulgate regulations establishing emission standards for, *inter alia*, "major sources" of HAPs.  42 U.S.C. § 7412(d).

44.     A "major source" under Section 112 includes any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit considering controls, in the aggregate, 10 tons per year or more of any HAP. 42 U.S.C. § 7412(a)(1).

45.     HAPs are chemical compounds listed in Section 112(b) of the Act that present or may present a threat of adverse human health effects or adverse environmental effects.  42 U.S.C. § 7412(b).

46.     No person is permitted to operate a major source in violation of an applicable emission standard after the standard has gone into effect.  42 U.S.C. § 7412(i)(3).

47.     In 1999, EPA promulgated under Section 112 of the Act "National Emission Standards for Hazardous Air Pollutants from Oil and Natural Gas Production Facilities."  64 Fed. Reg. 32,628 (June 17, 1999).  EPA amended these standards in 2012. 77 Fed. Reg. at 49,568. These standards are set forth in 40 C.F.R. part 63, subpart HH ("Subpart HH"), 40 C.F.R. §§ 63.760–77.

10

48.     Each of these standards is an "emission standard" within the meaning of Section 112(d) of the Act, 42 U.S.C. § 7412(d), or a "design, equipment, work practice, or operational standard, or combination thereof" under Section 112(h) of the Act, 42 U.S.C. § 7412(h).

49.     Subpart HH incorporates certain provisions of 40 C.F.R. part 61, subpart V ("Subpart V"), by reference.  *See* 40 C.F.R. §§ 63.769(c), 61.241–247.  These Subpart V provisions require owners and operators of regulated facilities to monitor equipment intended to operate in volatile hazardous air pollutant ("VHAP") service, such as pumps and valves, for leaks of air pollutants, and to repair leaks.

50.     Subpart HH requires owners and operators of natural gas processing plants to use Method 21 in monitoring leaks from equipment.  40 C.F.R. §§ 63.769(c) and 61.245(b).  For purposes of Subpart HH, a leak is detected from valves in natural gas processing plants if the detection instrument reading is 500 ppm or greater.  40 C.F.R. § 63.769(c).

51.     Pursuant to its authority under the Colorado Act, C.R.S. §§ 25-7-105(1)(b) and 109, CDPHE adopted Subpart HH, including all amendments, into its Colorado Air Quality Control Commission Regulation 8, Part E. 5 Colo. Code Regs. § 1001-110:E ("Regulation 8, Pt. E").

52.     Pursuant to its authority under the Colorado Act, C.R.S. §§ 25-7-105(1)(b) and 109, CDPHE adopted Subpart V, including all amendments, into its Colorado Air Quality Control Commission Regulation 8, Part A. 5 Colo. Code Regs. § 1001-110:A ("Regulation 8, Pt. A").

D.    **Fort Lupton Complex Permits**

53.    Defendant has operated the Fort Lupton Plant pursuant to Operating Permit No. 95OPWE013 issued by CDPHE on October 1, 1998, and last revised July 3, 2002.

54.    CDPHE issued construction permit 12WE1492 on June 14, 2013, pertaining to Train 1 of the Lancaster Plant.

55.    Since acquiring the Platte Valley Plant in March 2011, Defendant has operated the facility pursuant to Operating Permit 99OPWE207 issued by CDPHE to the facility's former owner on October 1, 1999.

56.    Operating Permit 99OPWE207 refers to the Platte Valley Plant as the "Ft. Lupton Plant." This complaint refers to the plant operating under Permit 99OPWE207 as the "Platte Valley Plant," and the plant operating under Permit 95OPWE013 as the "Fort Lupton Plant."

57.    By application dated April 16, 2015, Defendant requested that CDPHE modify Operating Permit No. 95OPWE013 (which only applied to the Fort Lupton Plant) and "issue an Operating Permit reflecting all equipment at the Fort Lupton Complex comprised of the Fort Lupton Gas Plant, the Platte Valley Gas Plant, and the recently commissioned Train 1 of the Lancaster Plant."

## GENERAL ALLEGATIONS

A.    **The Fort Lupton Complex**

58.    Defendant is the "owner and operator" of the Fort Lupton Plant, the Lancaster Plant, and the Platte Valley Plant within the meaning of Sections 111(a)(5) and 112(a)(9) of the Act, 42 U.S.C. §§ 7411(a)(5) and 7412(a)(9) and § 25-7-103(18.4), C.R.S.

59.     The Fort Lupton Plant, the Lancaster Plant, and the Platte Valley Plant are each a "new source" and a "stationary source" within the meaning of Sections 111(a)(2) and (a)(3) of the Act, 42 U.S.C. § 7411(a)(2), (a)(3) and § 25-7-103(23), C.R.S.  Also, *see* 5 CCR §§ 1001-5: I.B.29, 43

60.     The Fort Lupton Plant, Lancaster Plant, and Platte Valley Plant are stationary sources located within a contiguous area and under common control. 40 C.F.R. §§ 63.761 and 63.2.

61.     When pumps, valves, connectors, or other equipment used at the Fort Lupton Complex leak, they can release VOCs and HAPs into the atmosphere within the Denver Nonattainment Area.

**B.      Subpart KKK: Applicability to Fort Lupton and Platte Valley Plants**

62.     A "natural gas processing plant" is "any processing site engaged in the extraction of natural gas liquids from field gas, fractionation of mixed natural gas liquids to natural gas products, or both."  40 C.F.R. § 60.631.  "Onshore" means all facilities except those that are located in the territorial seas or on the outer continental shelf.  *Id*.

63.     The Fort Lupton Plant and the Platte Valley Plant are each an "onshore natural gas processing plant" within the meaning of 40 C.F.R. § 60.630.

64.     An "affected facility" in an onshore natural gas processing plant is "[t]he group of all equipment except compressors within a process unit."  40 C.F.R. § 60.630(a)(3).

65.     A "process unit" is "equipment assembled for the extraction of natural gas liquids from field gas, the fractionation of the liquids into natural gas products, or other operations associated with the processing of natural gas products.  A process unit can operate independently

if supplied with sufficient feed or raw materials and sufficient storage facilities for the products."
40 C.F.R. § 60.631.

66.     The Fort Lupton Plant and the Platte Valley Plant contain multiple "process units"
within the meaning of 40 C.F.R. § 60.631.

67.     Subpart KKK defines "equipment" as each pump, pressure relief device, open-
ended valve or line, valve, compressor, and flange or other connector that is in VOC service or in
wet gas service, and any device or system required by Subpart KKK.  *Id.*

68.     The Fort Lupton Plant and the Platte Valley Plant each use "equipment" within
the meaning of 40 C.F.R. § 60.631.

69.     Defendant was subject to the requirements of Subpart KKK with respect to the
Fort Lupton Plant from the time it acquired the facility in 1999 until approximately June 2013.

70.     Defendant was subject to the requirements of Subpart KKK as to equipment in
VOC service or wet gas service in all process units at the Platte Valley Plant beginning with its
acquisition in March 2011.  The Train 2, Regen, and Inlet process units of the Platte Valley Plant
became subject to Subpart OOOO when equipment installation projects were implemented in
November 2011 and in March and August 2013, respectively.

C.     **Subpart OOOO: Applicability to Fort Lupton, Lancaster, and
       Platte Valley Plants**

71.     A "natural gas processing plant" is "any processing site engaged in the extraction
of natural gas liquids from field gas, fractionation of mixed natural gas liquids to natural gas
products, or both."  40 C.F.R. § 60.5430.  "Onshore" means all facilities except those that are
located in the territorial seas or on the outer continental shelf.  *Id.*

14

72.     The Fort Lupton Plant, the Lancaster Plant, and the Platte Valley Plant are each an "onshore natural gas processing plant" within the meaning of 40 C.F.R. § 60.5430.

73.     An "affected facility" in an onshore natural gas processing plant for purposes of Subpart OOOO is "the group of all equipment, except compressors, within a process unit."  40 C.F.R. § 60.5365(f).

74.     Subpart OOOO defines "process unit" as "components assembled for the extraction of natural gas liquids from field gas, the fractionation of the liquids into natural gas products, or other operations associated with the processing of natural gas products.  A process unit can operate independently if supplied with sufficient feed or raw materials and sufficient storage facilities for the products."  40 C.F.R. § 60.5430.

75.     The Fort Lupton Plant, the Lancaster Plant, and the Platte Valley Plant each contain multiple "process units" within the meaning of 40 C.F.R. § 60.5430.

76.     Subpart OOOO defines "equipment" as each pump, pressure relief device, open-ended valve or line, valve, and flange or other connector that is in VOC service or in wet gas service, and any device or system required by Subpart OOOO.  *Id.*

77.     The Fort Lupton Plant, the Lancaster Plant, and the Platte Valley Plant each use "equipment" within the meaning of 40 C.F.R. § 60.5430.

78.     Defendant has been subject to the requirements of Subpart OOOO with respect to the Fort Lupton Plant since at least approximately July 2013, after it completed various construction projects and process modifications.

79.     Defendant has been subject to the requirements of Subpart OOOO with respect to the Lancaster Plant since it began operating the facility in April 2014.

15

80.     In 2011, Defendant undertook an equipment installation project at the Train 2 process unit of the Platte Valley Plant, adding pressure relief devices and 57 new valves by no later than November 3, 2011.

81.     Defendant has been subject to Subpart OOOO at the Train 2 process unit at the Platte Valley Plant from approximately November 2011 to the present.

82.     In 2013, Defendant undertook an equipment installation project at the Regen process unit of the Platte Valley Plant, adding 52 new valves by no later than March 31, 2013.

83.      Defendant has been subject to Subpart OOOO at the Regen process unit at the Platte Valley Plant from approximately March 2013 to the present.

84.     In 2013, Defendant undertook an equipment installation project at the Inlet process unit of the Platte Valley Plant, adding pressure relief devices and 58 new valves by no later than August 15, 2013.

85.     Defendant has been subject to Subpart OOOO at the Inlet process unit at the Platte Valley Plant from approximately August 2013 to the present.

**D.      Subpart HH: Applicability to Platte Valley Plant**

86.     Subpart HH applies, *inter alia*, to owners and operators of "affected sources" at oil and natural gas production facilities that are "major sources" of HAPs.  40 C.F.R. §§ 63.2 and 63.760(a).  For major sources, the "affected source" includes the group of all ancillary equipment, except compressors, intended to operate in VHAP service located at natural gas processing plants.  40 C.F.R. § 63.760(b)(1)(iii).

87.     For the purpose of major source determination, facility (including a building, structure, or installation) means "oil and natural gas production and processing equipment that is

located within the boundaries of an individual surface site . . . .  Examples of facilities in the oil

and natural gas production source category include . . . natural gas processing plants."  40 C.F.R.

§ 63.761.

88.     A "natural gas processing plant" is "any processing site engaged in the extraction

of natural gas liquids from field gas, or the fractionation of mixed N[atural] G[as] L[iquids] to

natural gas products, or a combination of both."  *Id.*

89.     The Platte Valley Plant is a "natural gas processing plant" within the meaning of

40 C.F.R. § 63.761.

90.     The Platte Valley Plant has been a "major source," within the meaning of Section

112(a)(1) of the Act, 42 U.S.C. § 7412(a)(1), and of 40 C.F.R. §§ 63.2 and 63.761, and therefore

certain ancillary equipment, except compressors, intended to operate in VHAP service at the

facility has been subject to the equipment leak standards of Subpart HH.

### FIRST CLAIM
#### (Platte Valley Plant – Train 2 Process Unit)
#### Failure to Comply with Subpart OOOO Requirements

91.     The United States and Colorado reallege and incorporate the previous Paragraphs

as if fully set forth within.

92.     The equipment installation project completed at the Train 2 process unit of the

Platte Valley Plant on or around November 3, 2011 constituted a "modification" pursuant to

Section 111 of the Act.  42 U.S.C. § 7411(a)(4); 40 C.F.R. § 60.14.

93.     The equipment installation project completed at the Train 2 process unit has

subjected Defendant to the federal requirements of Subpart OOOO with respect to this process

unit since approximately October 15, 2012, 40 C.F.R. § 60.5370(a), and to Colorado's

Regulation 6, Pt. A, since December 15, 2012. 5 Colo. Code Regs. § 1001-8:A.

94.     With certain exceptions not relevant here, pursuant to Subpart OOOO and

Colorado's Regulation 6, Pt. A, Defendant is required to monitor pumps, valves, and connectors

in gas/vapor or light liquid service at the Train 2 process unit initially and at specified

frequencies thereafter. 40 C.F.R. §§ 60.5400(a), 60.482-2a(a), 60.482-7a(a) and (c), and 60.482-

11a(a) and (b)(3); 5 Colo. Code Regs. 1001-8:A.  If any such equipment is found leaking above

the applicable regulatory threshold, Defendant is required to make a first attempt at repair within

five days after each leak is detected, and in any event to repair each leak as soon as practicable,

but not later than 15 days after detection.  40 C.F.R. §§ 60.5400(a), 60.482-2a(b)(1) and (c),

60.482-7a(b) and (d), and 60.482-11a(b)(2) and (d); 5 Colo. Code Regs. 1001-8:A.

95.     From approximately October 15, 2012 until at least December 8, 2015, Defendant

failed to make a first attempt at repair of leaks above the applicable regulatory threshold in

approximately 159 pumps and valves at the Train 2 process unit within five days after each leak

was detected, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-2a(b)(1) and (c)(2), 60.482-7a(b)

and (d)(2), and 5 Colo. Code Regs. 1001-8:A (for violations on or after December 15, 2012).

96.     From approximately October 15, 2012 until at least December 8, 2015, Defendant

failed to repair approximately 158 pumps and valves at the Train 2 process unit within 15 days of

identifying them to have been leaking above the applicable regulatory threshold, in violation of

40 C.F.R. §§ 60.5400(a), 60.482-2a(b)(1) and (c)(1),60.482-7a(b) and (d)(1), and 5 Colo. Code

Regs. 1001-8:A (for violations on or after December 15, 2012).

97.    From approximately October 15, 2012 until at least December 8, 2015 Defendant failed to monitor connectors for leaks above the applicable regulatory threshold at the Train 2 process unit, in violation of 40 C.F.R. §§ 60.5400(a),60.482-11a(a) and (b), and 5 Colo. Code Regs. 1001-8:A (for violations on or after December 15, 2012).

98.    For 146 valves found leaking above 500 ppm from approximately October 15, 2012 until at least December 8, 2015, Defendant failed to monitor monthly until a leak is not detected for two successive months, in violation of 40 C.F.R. § 60.482-7a(c) and 5 Colo. Code Regs. 1001-8:A (for violations on or after December 15, 2012).

99.    Each failure by Defendant to monitor monthly; to make a first attempt to repair of pumps and valves found to have been leaking above the applicable regulatory threshold within five days after each leak was detected; to repair them within 15 days; and to monitor connectors, constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and Colorado's Regulation 6, Pt. A.

100.    Upon information and belief, Defendant continued to violate Subpart OOOO and Colorado's Regulation 6, Pt. A at least through the end of 2018.

101.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continues.

**SECOND CLAIM**
**(Platte Valley Plant – Regen Process Unit)**
**Failure to Comply with Subpart OOOO Requirements**

102.    The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

19

103.   The equipment installation project completed at the Regen process unit of the Platte Valley Plant on or around March 31, 2013 constituted a "modification" pursuant to Section 111 of the Act.  42 U.S.C. § 7411(a)(4); 40 C.F.R. § 60.14.

104.   The equipment installation project completed at the Regen process unit has subjected Defendant to the requirements of Subpart OOOO and Colorado's Regulation 6, Pt. A, with respect to this process unit since approximately April 1, 2013.  40 C.F.R. § 60.5370(a); 5 Colo. Code Regs. 1001-8:A.

105.   From approximately April 1, 2013 until at least December 8, 2015, Defendant failed to make a first attempt at repair of leaks above the applicable regulatory threshold in approximately 28 valves at the Regen process unit within five days after each leak was detected, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-7a(b) and (d)(2), and 5 Colo. Code Regs. 1001-8:A.

106.   From approximately April 1, 2013 until at least December 8, 2015, Defendant failed to repair approximately 28 valves at the Regen process unit within 15 days of identifying them to have been leaking above the applicable regulatory threshold, in violation of 40 C.F.R. §§ 60.5400(a),60.482-7a(b) and (d)(1), and 5 Colo. Code Regs. 1001-8:A.

107.   From approximately April 1, 2013 until at least December 8, 2015 Defendant failed to monitor connectors for leaks above the applicable regulatory threshold at the Regen process unit, in violation of 40 C.F.R. §§ 60.5400(a),60.482-11a(a) and (b), and 5 Colo. Code Regs. 1001-8:A.

108.   For 28 valves found leaking above 500 ppm from approximately April 1, 2013 until at least December 8, 2015, Defendant failed to monitor monthly until a leak is not detected

for two successive months, in violation of 40 C.F.R. § 60.482-7a(c) and 5 Colo. Code Regs. 1001-8:A.

109.     Each failure by Defendant to monitor monthly; to make a first attempt to repair of pumps and valves found to have been leaking above the applicable regulatory threshold within five days after each leak was detected; to repair them within 15 days; and to monitor connectors, constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and Colorado's Regulation 6, Pt. A.

110.     Upon information and belief, Defendant continued to violate Subpart OOOO and Colorado's Regulation 6, Pt. A at least through the end of 2018.

111.      As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continues.

### THIRD CLAIM
### (Platte Valley Plant – Inlet Process Unit)
### Failure to Comply with Subpart OOOO Requirements

112.     The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

113.     The equipment installation project completed at the Inlet process unit of the Platte Valley Plant on or around August 15, 2013 constituted a "modification" pursuant to Section 111 of the Act.  42 U.S.C. § 7411(a)(4); 40 C.F.R. § 60.14.

114.     The equipment installation project completed at the Inlet process unit has subjected Defendant to the requirements of Subpart OOOO and Regulation 6, Pt. A, with respect

to this process unit since approximately August 16, 2013.  40 C.F.R. § 60.5370(a); 5 Colo. Code Regs. 1001-8:A.

115.    From approximately August 16, 2013 until at least December 8, 2015, Defendant failed to make a first attempt at repair of leaks above the applicable regulatory threshold in approximately 73 valves at the Inlet process unit within five days after each leak was detected, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-7a(b) and (d)(2), and 5 Colo. Code Regs. 1001-8:A.

116.    From approximately August 16, 2013 until at least December 8, 2015, Defendant failed to repair approximately 73 valves at the Inlet process unit within 15 days of identifying them to have been leaking above the applicable regulatory threshold, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-7a(b) and (d)(1), and 5 Colo. Code Regs. 1001-8:A.

117.    From approximately August 16, 2013 until at least December 8, 2015 Defendant failed to monitor connectors for leaks above the applicable regulatory threshold at the Inlet process unit, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-11a(a) and (b), and 5 Colo. Code Regs. 1001-8:A.

118.    For 71 valves found leaking above 500 ppm from approximately August 16, 2013 until at least December 8, 2015, Defendant failed to monitor monthly until a leak is not detected for two successive months, in violation of 40 C.F.R. § 60.482-7a(c) and 5 Colo. Code Regs. 1001-8:A.

119.    Each failure by Defendant to monitor monthly; to make a first attempt to repair of pumps and valves found to have been leaking above the applicable regulatory threshold within five days after each leak was detected; to repair them within 15 days; and to monitor connectors,

constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and Colorado's

Regulation 6, Pt. A.

120.    Upon information and belief, Defendant continued to violate Subpart OOOO and

Colorado's Regulation 6, Pt. A, at least through the end of 2018.

121.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19,

and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil

penalties for each day that each violation continues.

**FOURTH CLAIM**
**(Platte Valley Plant)**
**<u>Failure to Monitor and Repair Equipment Consistent with</u>**
**<u>Subpart HH Requirements at Subject Process Units</u>**

122.    The United State and Colorado reallege and incorporate the previous Paragraphs

as if fully set forth within.

123.    Based upon the facility's reported potential to emit greater than 10 tons per year

of Formaldehyde (CAS No. 50000), a listed HAP under Section 112(b)(1) of the Act, the Platte

Valley Plant has been a "major source" under the Act and subject to Subpart HH and Colorado's

Regulation 8, Pt. E, at least since March 2011, when it was acquired by Defendant.  42 U.S.C. §§

7412(a)(1); 40 C.F.R. §§ 63.2 and 63.760; 5 Colo. Code Regs. § 1001-10:E.

124.    Accordingly, Defendant has been subject to the equipment leak standards of

Subpart HH with respect to all ancillary equipment intended to operate in VHAP service at the

Platte Valley Plant, except for ancillary equipment in process units subject to and controlled

under (a) Subpart OOOO, or (b) Subpart KKK from March 2011 until October 15, 2012.  40

C.F.R. §§ 63.760 and 63.769; 5 Colo. Code Regs. §§ 1001-8:A and 1001-10:E.

125.     Pursuant to Subpart HH and Colorado's Regulation 8, Pt. E, Defendant is required to monitor valves in VHAP service at the Platte Valley Plant, except for equipment subject to and controlled under Subpart OOOO requirements.  Beginning October 15, 2012, a leak is detected from valves in VHAP service if the detection instrument reading is 500 ppm or greater. Owners and operators of Subpart HH and Colorado Regulation 8, Pt. E affected sources constructed on or before August 23, 2011 were required to comply with this leak definition by October 15, 2013. 77 Fed. Reg. at 49,503; 5 Colo. Code Regs. §§ 1001-8:A and 1001-10:E.

126.     With certain other exceptions not relevant here, Defendant is required to make a first attempt at repair no later than five days after each leak above the applicable regulatory threshold is detected, and in any event to repair each leak as soon as practicable, but not later than 15 days after detection, except for leaks detected before October 15, 2013.  For leaks detected before October 15, 2013, Defendant must repair the equipment within 15 days after detection or by October 15, 2013, whichever is later.  40 C.F.R. §§ 63.769(c), 61.242-7(d), and 5 Colo. Code Regs. §§ 1001-10:A and E.

127.     For approximately 251 valves in VHAP service at the Platte Valley Plant where leaks above the applicable regulatory threshold were detected from approximately October 11, 2013 at least until December 8, 2015, Defendant failed to make a first attempt at repair of the leaks within five days of detecting them, in violation of 40 C.F.R. §§ 63.769(c), 61.242-7(d)(2), and 5 Colo. Code Regs. §§ 1001-10:A and E.

128.     For approximately 159 valves in VHAP service at the Platte Valley Plant where leaks were detected above the applicable regulatory threshold from approximately October 15, 2012 until September 30, 2013, Defendant failed to repair the leaks by October 15, 2013, in

violation of 40 C.F.R. §§ 63.769(c), 61.242-7(d)(1), and 5 Colo. Code Regs. §§ 1001-10:A and E.

129.    For approximately 251 valves in VHAP service at the Platte Valley Plant where leaks were detected above the applicable regulatory threshold from approximately October 1, 2013 at least until December 8, 2015, Defendant failed to repair the valves within 15 days of detecting the leaks, in violation of 40 C.F.R. §§ 63.769(c), 61.242-7(d)(1), and 5 Colo. Code Regs. §§ 1001-10:A and E.

130.    Alternatively, due to the emissions from the contiguous and commonly controlled plants at the Fort Lupton Complex of 10 tons per year or more of Formaldehyde, Defendant has been subject to the equipment leak standards of Subpart HH and Colorado's Regulation 8, Pt. E with respect to all ancillary equipment intended to operate in VHAP service at the Platte Valley Plant, except for any ancillary equipment in process units subject to and controlled under Subpart OOOO.  Defendant has been subject to these Subpart HH and Colorado's Regulation 8, Pt. E requirements since at least March 2014, three years after the Platte Valley Plant was acquired by Defendant and thus came under its common control along with the Fort Lupton Plant and became a "major source" under the Act, Subpart HH, and Colorado's Regulation 8, Pt. E. 42. U.S.C. §§ 7412(a)(1) and 7412(b)(1), and 40 C.F.R. §§ 63.2, 63.760(f), and 63.769(b); 5 Colo. Code Regs. §§ 1001-10:A and E.

131.    Accordingly, for approximately 182 valves in VHAP service at the Platte Valley Plant where leaks above the applicable regulatory threshold were detected from approximately March 1, 2014 until at least December 8, 2015, Defendant failed to make a first attempt at repair

of the leaks within five days of detecting them, in violation of 40 C.F.R. §§ 63.769(c), 61.242-7(d)(2), and 5 Colo. Code Regs. §§ 1001-10:A and E.

132.    For approximately 182 valves in VHAP service at the Platte Valley Plant where leaks above the applicable regulatory threshold were detected from approximately March 1, 2014 at least until December 8, 2015, Defendant failed to repair the valves within 15 days of detecting the leaks, in violation of 40 C.F.R. §§ 63.769(c), 61.242-7(d)(1), and 5 Colo. Code Regs. §§ 1001-10:A and E.

133.    Each failure by Defendant, with respect to valves in VHAP service found to have been leaking above the applicable regulatory threshold, to make a first attempt to repair the leak within five days of detection, and to repair the leak within 15 days of detection or by October 15, 2013, whichever is later, constitutes a separate violation of Subpart HH, Section 112 of the Act, and Colorado's Regulation 8, Pt. E.

134.    Upon information and belief, Defendant has continued to violate Subpart HH and Colorado's Regulation 8, Pt. E, at least through the end of 2018.

135.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continues.

### FIFTH CLAIM
#### (Fort Lupton Plant)
#### Failure to Monitor Connectors in Violation of Subpart OOOO

136.    The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

137.     With certain exceptions not relevant here, pursuant to Subpart OOOO and Colorado's Regulation 6, Pt. A, Defendant was required, subsequent to the initial monitoring of all connectors in gas/vapor and light liquid service for leaks greater than or equal to 500 ppm, to perform monitoring within 12 months of determining that the percentage of leaking connectors in a process unit was greater than or equal to 0.5 percent.  40 C.F.R. §§ 60.5400(a), 60.482-11a(b)(3)(i) and 5 Colo. Code Regs. § 1001-8:A.

138.     As of approximately July 1, 2015, Defendant had failed to monitor approximately 3,807 connectors located in the NGL process unit at the Fort Lupton Plant for leaks within 12 months of the initial monitoring period when it should have determined from available monitoring results that the percentage of leaking connectors in the process unit was greater than or equal to 0.5 percent, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-11a(b)(3)(i), and 5 Colo. Code Regs. § 1001-8:A.

139.     Each failure to monitor connectors for leaks within the required 12-month period constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and Colorado's Regulation 6, Pt. A.

140.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continued.

### SIXTH CLAIM
### (Lancaster Plant)
### <u>Failure to Monitor Connectors in Violation of Subpart OOOO</u>

141.     The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

142.    With certain exceptions not relevant here, pursuant to Subpart OOOO and Colorado's Regulation 6, Pt. A, Defendant was required to initially monitor all connectors in gas/vapor and light liquid service in a process unit for leaks greater than or equal to 500 ppm by the later of 12 months after the compliance date or after initial startup.  40 C.F.R. §§ 60.5400(a) and 60.482-11a(a); 5 Colo. Code Regs. § 1001-8:A.

143.    As of approximately May 1, 2015, Defendant had failed to monitor approximately 12,732 connectors located in eight process units at the Lancaster Plant within 12 months after their initial startup in April 2014, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-11a(a), and 5 Colo. Code Regs. § 1001-8:A.

144.    Each failure to monitor connectors for leaks within the required 12-month period constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and Colorado's Regulation 6, Pt. A.

145.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continued.

**SEVENTH CLAIM**
**(Platte Valley Plant)**
**Failure to Repair Leaking Equipment within 15 Days in Violation of Subpart KKK**

146.    The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

147.    With certain exceptions not relevant here, pursuant to Subpart KKK and Colorado's Regulation 6, Pt. A, when Defendant detects a leak in equipment in gas/vapor or light liquid service above the applicable regulatory threshold, it must repair the leak as soon as

practicable but not later than 15 calendar days after detection.  40 C.F.R. §§ 60.632(a), 60.633(b), 60.482-2, 60.482-3, 60.482-7, and 60.482-9; and 5 Colo. Code Regs. § 5-1001-8:A.

148.    From approximately July 13, 2012 until at least December 8, 2015, Defendant failed to repair approximately 28 leaking pumps, compressors, pressure relief devices, and valves located in process units at the Platte Valley Plant within 15 calendar days of detection, in violation of, as applicable, 40 C.F.R. §§ 60.633(b), 60.482-2, 60.482-3, 60.482-7, and 60.482-9; and 5 Colo. Code Regs. § 5-1001-8:A.

149.    Each failure to repair an equipment leak above the applicable regulatory threshold within 15 calendar days of detection constitutes a separate violation of Subpart KKK, Section 111 of the Act, and Colorado's Regulation 6, Pt. A.

150.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continued.

**EIGHTH CLAIM**
**(Fort Lupton Plant)**
**Failure to Repair Leaking Equipment within 15 Days in Violation of Subpart KKK**

151.    The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

152.    With certain exceptions not relevant here, pursuant to Subpart KKK and Colorado's Regulation 6, Pt. A, when Defendant detects a leak in equipment in gas/vapor or light liquid service above the applicable regulatory threshold, it must repair the leak as soon as practicable but not later than 15 calendar days after detection.  40 C.F.R. §§ 60.632(a), 60.633(b), 60.482-2, 60.482-7, and 60.482-9; and 5 Colo. Code Regs. § 1001-8:A.

153.     From approximately December 15, 2012 until at least June 30, 2013, Defendant failed to repair approximately 3 leaking valves located in process units at the Fort Lupton Plant within 15 calendar days of detection, in violation of, 40 C.F.R. §§ 60.482-7, 60.482-9, and Colorado's Regulation 6, Pt. A.

154.     Each failure to repair an equipment leak above the applicable regulatory threshold within 15 calendar days of detection constitutes a separate violation of Subpart KKK, Section 111 of the Act, and Colorado's Regulation 6, Pt. A.

155.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continued.

### NINTH CLAIM
### (Fort Lupton Plant)
### <u>Failure to Repair Leaking Equipment within 15 Days in Violation of Subpart OOOO</u>

156.     The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

157.     With certain exceptions not relevant here, pursuant to Subpart OOOO and Colorado's Regulation 6, Pt. A, when Defendant detects a leak in equipment in gas/vapor or light liquid service above the applicable regulatory threshold, it must repair the leak as soon as practicable but not later than 15 calendar days.  40 C.F.R. §§ 60.5400(a), 60.5401(b), 60.482-2a, 60.482-7a, 60.482-9a, and 60.482-11a; and 5 Colo. Code Regs. § 1001-8:A.

158.     From approximately July 3, 2013 until at least December 8, 2015, Defendant failed to repair approximately 88 leaking pressure relief devices, pumps, valves, and connectors located in process units at the Fort Lupton Plant within 15 calendar days of detection, in

violation of, respectively, 40 C.F.R. §§ 60.5401(b), 60.482-2a, 60.482-7a, 60.482-9a, and 60.482-11a and Colorado's Regulation 6, Pt. A.

159.     Each failure to repair an equipment leak above the applicable regulatory threshold within 15 calendar days of detection constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and Colorado's Regulation 6, Pt. A.

160.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continued.

### TENTH CLAIM
### (Lancaster Plant)
### Failure to Repair Leaking Equipment within 15 Days in Violation of Subpart OOOO

161.     The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

162.     With certain exceptions not relevant here, pursuant to Subpart OOOO and Colorado's Regulation 6, Pt. A, when Defendant detects a leak in equipment in gas/vapor or light liquid service above the applicable regulatory threshold, it must repair the leak as soon as practicable but not later than 15 calendar days.  40 C.F.R. §§ 60.5400(a), 60.482-2a, 60.482-7a, 60.482-9a, and 60.482-11a; and 5 Colo. Code Regs. § 1001-8:A.

163.     From approximately September 5, 2014 until at least December 28, 2015, Defendant failed to repair approximately 35 leaking pumps, valves, and connectors located in process units at the Lancaster Plant within 15 calendar days of detection, in violation of, respectively, 40 C.F.R §§ 60.482-2a, 60.482-7a, 60.482-9a, and 60.482-11a; and 5 Colo. Code Regs. § 1001-8:A.

164.    Each failure to repair an equipment leak above the applicable regulatory threshold within 15 calendar days of detection constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and Colorado's Regulation 6, Pt. A.

165.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continued.

## ELEVENTH CLAIM
### (Lancaster Plant)
### Excessive "Difficult-to-Monitor" Valve Designation in Violation of Subpart OOOO

166.    The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

167.    With certain exceptions not relevant here, pursuant to Subpart OOOO and Colorado's Regulation 6, Pt. A, valves that Defendant designates as "difficult-to-monitor" are exempt from the monthly or quarterly monitoring requirements of 40 C.F.R. § 60.482-7a(a) so long as Defendant designates no more than 3.0 percent of its total valves as "difficult-to-monitor."  40 C.F.R. §§ 60.5400(a) and 60.482-7a(h)(2)(ii); and 5 Colo. Code Regs. § 1001-8:A.

168.    Between approximately 2014 and 2016, Defendant designated more than 3.0 percent of the valves in the Amine 1A, Cryogenic, NGL Storage, and Refrigeration process units at the Lancaster Plant as "difficult-to-monitor," resulting in approximately 774 missed monitoring events, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-7a(h)(2)(ii), and 5 Colo. Code Regs. § 1001-8:A.

169.     Each missed monitoring event as a result of designating an excessive number of valves as "difficult-to-monitor" constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and Colorado's Regulation 6, Pt. A.

170.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continued.

## TWELFTH CLAIM
### (Fort Lupton Plant)
### Unsealed Open-ended Lines in Violation of Subpart OOOO

171.     The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

172.     Pursuant to Subpart OOOO and Colorado's Regulation 6, Pt. A, Defendant must ensure that an open-ended valve or line shall be sealed with a cap, blind flange, plug, or second valve at all times except during operations requiring process fluid flow through the open-ended valve or line.   40 C.F.R. §§ 60.5400(a) and 60.482-6a(a)(2), and 5 CCR 1001-8:A.

173.     On or about November 17, 2017, Defendant identified one un-sealed, open-ended line at the Fort Lupton Plant on November 17, 2017.

174.     The open-ended line Defendant identified on or about November 17, 2017 at the Fort Lupton Plant was not required to be open for process fluid flow.

175.     Defendant sealed the open-ended line and re-monitored the line on the day of discovery.

176.      Defendant failed to maintain a seal on the open-ended line in accordance with 40 C.F.R. § 60.482-6a(a)(2), in violation of 40 C.F.R. § 60.5400(a) and 5 CCR 1001-8:A.

177.      As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continued.

### THIRTEENTH CLAIM
### (Platte Valley Plant)
### Unsealed Open-ended Lines in Violation of Subpart KKK

178.      The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

179.      Pursuant to Subpart KKK and Colorado's Regulation 6, Pt. A, Defendant must ensure that an open-ended valve or line shall be sealed with a cap, blind flange, plug, or second valve at all times except during operations requiring process fluid flow through the open-ended valve or line.   40 C.F.R. §§ 60.632(a) and 60.482-6(a)(2), and 5 CCR 1001-8:A.

180.      On or about November 2, 2017, December 5, 2017, and March 6, 2018, Defendant identified three un-sealed, open-ended lines at the Platte Valley Plant.

181.      The open-ended lines Defendant identified on or about November 2, 2017, December 5, 2017, and March 6, 2018 at the Platte Valley Plant were not required to be open for process fluid flow.

182.      Defendant completed repairs and re-monitoring for each open-ended line on the day of discovery.

183.      Defendant failed to seal open-ended lines in accordance with 40 C.F.R. § 60.482-6(a)(2), in violation of Permit Number 99OPWE207, Condition 2.4.1, 40 C.F.R. § 60.632(a), and 5 CCR 1001-8:A.

184.      As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), 40 C.F.R. Part 19, and C.R.S. §§ 25-7-121 and 122, these violations subject Defendant to injunctive relief and civil penalties for each day that each violation continued.

## PRAYER FOR RELIEF

**WHEREFORE**, the United States and Colorado respectfully request the Court enter judgment in favor of the United States and Colorado and against Defendant including the following relief:

A.      Permanently enjoin Defendant from further violating the Act, the regulations implementing the Act, the Colorado Act, and the regulations implementing the Colorado Act;

B.      Order Defendant to take appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Act, the regulations implementing the Act, the Colorado Act, and the regulations implementing the Colorado Act;

C.      Assess a civil penalty against Defendant for each violation of the applicable provisions of the Act, the Colorado Act and the regulations implementing the Act and the Colorado Act, of up to $37,500 per day for each violation occurring between January 13, 2009 and November 2, 2015, and up to $97,229 per day for each violation occurring after November 2, 2015 for violations of federal law and up to $15,000.00 per day for each violation of state law; and

D.      Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,


/s/ Jeffrey Bossert Clark
JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice




/s/ John W. Sither
JOHN W. SITHER
Senior Counsel
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Telephone: (202) 514-5484
Fax: (202) 514-0097
Email: John.Sither@usdoj.gov

Attorney for Plaintiff United States of America

OF COUNSEL
Jessica Portmess
Timothy J. Sullivan
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, CO 80202-1129

FOR THE STATE OF COLORADO, ON
BEHALF OF THE COLORADO
DEPARTMENT OF PUBLIC HEALTH AND
ENVIRONMENT

PHIL WEISER
Attorney General
State of Colorado


/s/ Thomas A. Roan_____
THOMAS A. ROAN
First Assistant Attorney General
Air Quality Unit
Natural Resources and Environment Section
Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, Colorado 80203
Telephone: (303) 508-6268
Fax: (303) 508-6039
Email: Tom.Roan@coag.gov

Attorney for Plaintiff State of Colorado